IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

      Respondent/Plaintiff,

vs.                                                           Civil No. 10-714 BB/RHS
                                                          Criminal No. 09-423 BB

**JOEL GARCIA-PARRA**,

      Petitioner/Defendant.

**PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

Joel Garcia-Parra, a prisoner in federal custody, seeks relief according to 28 U.S.C. § 2255, which allows this Court to vacate, set aside or correct the sentence imposed upon him. Petitioner Garcia-Parra filed his motion on July 28, 2010 (Doc. 1). The United States of America responded on September 30, 2010 (Doc. 7). Petitioner replied on November 4, 2010 (Doc. 8). After a careful review of Petitioner's arguments and the documents submitted for judicial review, I recommend that the motion be denied and that the case be dismissed with prejudice.

**BACKGROUND**

The facts relevant to Petitioner's motion span several years. In 2000, Petitioner pled guilty to stabbing another person during a knife fight. In May 2001, Petitioner was deported from the United States to Mexico. (Presentence Investigation Report (PSR) at 3.) At some point after deportation, he unlawfully re-entered the United States. (PSR at 3.) While in the United States unlawfully after deportation, the Petitioner committed another violent crime. (PSR at 3.)

On July 16, 2008, Petitioner was arrested and charged with aggravated assault against a household member; battery against a household member; and resisting, evading or obstructing an officer. (PSR at 7-8.) During his stay at the Dona Ana County Detention Center in Las Cruces for the domestic violence crimes, Petitioner admitted to an Immigration and Customs Enforcement (ICE) agent on July 24, 2008 that he was a Mexican citizen who had entered the United States without legal authority to do so. On January 8, 2009, Petitioner entered the custody of ICE.

On January 12, 2009, the Court appointed attorney James Baiamonte to represent Petitioner on re-entry charges. On February 20, 2009, Petitioner signed a Fast Track Plea Agreement (Crim. No. 09-423, Doc. 12), and waived both his right to appeal any sentence that conformed to the plea agreement and his right to collaterally attack his conviction with a § 2255 petition. (Agreement at 5.) The only issue which Petitioner is allowed to appeal is ineffective assistance of counsel. (Agreement at 5.)

With regard to the sentence, the agreement states, "the parties agree that the guidelines will be used to determine the Defendant's sentencing range." (Agreement at 3.) While the plea agreement did not specify the minimum number of months that the Petitioner could serve in prison, the Agreement provided that Petitioner could be imprisoned for up to 20 years (Agreement at 5) and that the prosecution would recommend a sentence at the lower end of the sentencing guidelines. (Agreement at 4.) On the signature page of the plea agreement, it states that Petitioner "agrees and represents that there have been no representations or promises from anyone as to what sentence the Court will impose." (Agreement at 6.) Immediately above Petitioner's signature there is a paragraph regarding the Petitioner's understanding of the agreement:

> I have read this agreement and carefully reviewed every part of it with my

>attorney in my native language.  I understand the charges, the penalties, and have fully discussed the case and my potential defenses with my attorney.  I further agree that the Government could prove beyond a reasonable doubt at trial the facts alleged in the Information.  I understand the agreement and voluntarily sign it.

(Agreement at 6.)

Petitioner then appeared in front of The Honorable W. Daniel Schneider, United States Magistrate Judge, also on February 20, 2009, to discuss the plea agreement.

>The Court:... [Y]ou're charged with reentry of a removed alien.  Have you had enough time to discuss the charges with your attorney?
>
>The Defendant: Yes, your Honor.
>
>The Court: And are you satisfied with the representation he's given you?
>
>The Defendant: Yes, your Honor.

(Transcript 3:18-25.)

>The Court: Have you had enough time to read and review this plea agreement with your attorney before signing it?
>
>The Defendant: Yes, your Honor.
>
>The Court: And do you understand the terms of your agreement?
>
>The Defendant: Yes, your Honor.
>
>The Court: All right.  Has anybody coerced you in order to get you to plead guilty?
>
>The Defendant: No, your Honor.
>
>The Court: Has anybody made any promises to you to get you to plead guilty other than the promises that are in the plea agreement?
>
>The Defendant: No, your Honor.
>
>The Court:  All right.  Are you pleading guilty voluntarily because you are guilty?
>
>The Defendant: Yes, your Honor.

(Tr. 5:4-19.)

>The Court: .... First, I want to talk about the sentencing provisions which are found under paragraph five on pages two, three, four and five.
>
>Have you discussed with your attorney the maximum penalty the Court could impose for this violation, which among other punishments could include a period of imprisonment of up to 20 years and a fine not to exceed $250,000?
>
>The Defendant: Yes, your Honor.
>
>The Court: And do you understand that the sentencing judge is not bound by this plea agreement and that it will be up to the sentencing judge to decide whether or not to accept this agreement?
>
>The Defendant: Yes, your Honor.
>
>The Court: All right.  Now the sentencing judge is going to calculate the applicable sentencing range along with possible departures from that range under the sentencing guidelines and other sentencing factors set out in the law.
>
>Have you discussed that with your attorney?
>
>The Defendant: Yes, your Honor.

(Tr. 6:10-7:3.)

>The Court: In this agreement, you waive certain of your appellate and post-conviction rights.  Have you discussed that with your attorney?
>
>The Defendant: Yes, your Honor.

(Tr. 7:4-7.)

>The Court: All right.  It is the finding of the Court that the defendant is fully competent and capable of entering an informed plea, that he is aware of the nature of the charge and the consequences of the plea, and that the plea of guilty is a knowing and voluntary plea as supported by independent evidence of the elements of the offense charged.  The plea of guilty is, therefore, accepted by the Court and you are adjudged guilty of the offense.  As I stated earlier, it will be up to the sentencing judge to decide whether or not to accept your plea agreement.

(Tr. 8:19-9:3.)

The Pre-Sentence Investigation Report (PSR) was disclosed on April 17, 2009.  Counsel

reviewed this report with Petitioner on April 29, 2009 at the Torrance County Detention Center. (Doc. 7-3 at 3; Tr. 3:1-6.)  The PSR specifically stated that the statute allowed for 20 years of incarceration but that the sentencing guidelines were 51 to 63 months.  (PSR at 15.)  There is not any information in the PSR to suggest that anybody had discussed or 18-24 months or that a sentence of that duration would be suggested to the sentencing judge.

Almost four months after pleading guilty and approximately two weeks before sentencing, on June 10, 2009, Petitioner requested new counsel, which was denied.  On June 25, 2009, Petitioner and Mr. Baiamonte appeared for sentencing in front of The Honorable Bruce D. Black, United States District Judge.  During the sentencing hearing, Petitioner addressed the Court.  "I think I should have went the legal way and tried to get my legal status before I came to the United States illegally after I was deported one time."  (Tr. 4:17-20.)  Judge Black reviewed on the record the sentencing guidelines and sentenced Petitioner to the minimum allowed within the guidelines, which was 51 months.

> The Court: Your client has waived his right to appeal; is that right, Mr. Baiamonte?
>
> Mr. Baiamonte: That's correct, sir.
>
> The Court: The Court finds pursuant to the plea agreement, defendant has waived his right to appeal the final sentence of this Court, as it is imposed under 18 United States Code, Section 3742.

(Tr. 6:13-19.)  Judge Black entered judgment on July 1, 2009.

On October 26, 2009, Petitioner appealed to the Tenth Circuit Court of Appeals.  On January 6, 2010, the Tenth Circuit denied the appeal due to its untimeliness.  Petitioner then filed his § 2255 motion in this Court on July 28, 2010.

**CONTROLLING LAW**

Petitioner asserts four grounds for relief under § 2255, all of which are essentially ineffective assistance of counsel claims. The seminal case for reviewing an ineffective assistance of counsel claim is Strickland v. Washington, 466 U.S. 668 (1984). According to the United States Supreme Court, Petitioner must demonstrate that both (1) his counsel's performance was deficient and (2) that this deficiency prejudiced his defense. Id. at 687. To satisfy Strickland's first prong, Petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. In order to do so, Petitioner must overcome the strong presumption that his attorney's conduct did not fall within the wide range of competence demanded of attorneys in criminal cases. Gillette v. Tansy, 17 F.3d 308, 310 (10th Cir. 1994); see Hill v. Lockhart, 474 U.S. 52, 56. With respect to this prong, Petitioner must also show that defense counsel's performance was not merely wrong, but rather completely unreasonable. See Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir. 1997) (citations omitted).

To satisfy Strickland's second prong, Petitioner must demonstrate that he was prejudiced as a result of counsel's deficient performance. In the context of alleging ineffective assistance of counsel for a plea agreement, the United States Supreme Court requires that, but for counsel's errors, Petitioner "would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

**ANALYSIS**

The crux of the motion, even though Petitioner expresses it several ways, is that Petitioner was sentenced to 51 months when he claims that his attorney promised him 18-24 months.

**Ground One**

For Ground One, Petitioner raises three issues. The first issue mentioned is the right to appeal. Petitioner "asserts that he was denied his Sixth Amendment right to appeal his sentence/conviction by counsel's failure to file a requested appeal and/or by counsel's failure to consult with him regarding an appeal." (Mot. at 4.) I find that this argument lacks merit because of the abundantly clear language in the Plea Agreement. The Plea Agreement contains a section which reads, "<u>WAIVER OF APPEAL RIGHTS AND POST-CONVICTION CHALLENGES TO SENTENCE</u>" (underlining and capitalization in original). The Petitioner signed an agreement which states, "Defendant knowingly waives the right to appeal any sentence within the applicable sentencing guideline range and imposed in conformity with this plea agreement. In addition, the Defendant agrees to waive any collateral attack to the Defendant's conviction pursuant to 28 U.S.C. § 2255. . . ." ( Agreement at 5.) Under <u>Strickland's</u> second prong, Petitioner must show that his counsel's deficient performance prejudiced him. Given that any appeal that counsel would have filed would have been moot due to the plain language of the Plea Agreement, Petitioner did not suffer any prejudice by counsel's failure to file an appeal.

The second issue mentioned is the number of months in the sentence. Petitioner "avers that following sentencing, he told counsel that he wanted to appeal because he was promised 18-24 months, yet he received 51 months." Mot. at 4. This argument is unpersuasive because it is a bald assertion without any factual support. Petitioner has not alleged any facts regarding when, why or how he was promised an 18-24 month sentence. Petitioner has not alleged that he ever saw in writing any information about an 18-24 month sentence, though he did sign the Plea Agreement that does not promise 18-24 months. There is nothing in the Plea Agreement that Petitioner cites to support his desired sentence. While he says that he "bargained, by and

through his attorney, for a sentence of 18-24 months," (Reply at 3) there is not any evidence to support that anybody told Petitioner that was a realistic possibility.  Petitioner does not claim that he was surprised when Judge Black sentenced him to 51 months, nor does he say that he immediately raised the issue with his attorney at the sentencing hearing.

Not only does Petitioner's argument lack evidentiary support, but there is evidence to the contrary to suggest that Petitioner could not have reasonably believed that his stay with the Bureau of Prisons would 18-24 months.  Judge Schneider discussed with this Petitioner: "Now the sentencing judge is going to calculate the applicable sentencing range along with possible departures from that range under the sentencing guidelines and other sentencing factors set out in the law.  Have you discussed that with your attorney?"  Petitioner said yes.  (Tr. 6:23-7:3.)  Furthermore, given Petitioner's previous crimes, convictions, incarcerations and deportation, I find it not plausible that Petitioner had any reasonable belief during plea negotiations that (1) counsel or any individual besides the sentencing judge could promise him a particular sentence and (2) a sentence of 18-24 months would be available to an individual who was convicted of a violent crime, deported, re-entered the United States without authorization, and then was convicted of another violent crime.

The third issue raised concerns the deportation.  Petitioner alleges that "counsel did not tell Movant about being deported upon the completion of his sentence." (Mot. at 4.)  I find this allegation to be wholly incredible on its face, and Petitioner has not asserted any particulars to give his assertion an air of credibility.  Petitioner pled guilty to re-entry of a removed alien. (Agreement at 2.)  Petitioner had already been deported once for entering the United States illegally and being convicted of a violent crime.  Prior to pleading guilty, Petitioner was in the custody of Immigration and Customs Enforcement (ICE), which would have made it difficult for

him not to learn that deportation was a distinct possibility for an individual who had been previously been deported. When Petitioner had the opportunity to address Judge Black, he admitted to the previous deportation and that he "should have went the legal way." (Tr. 4:17-18.) During that same court appearance, Judge Black recommended that Immigration and Customs Enforcement begin removal during Petitioner's sentence. (Tr. 6:6-8.) Petitioner has also exhibited his knowledge of deportation by stating, "Movant Garcia replies that this is a matter for the Immigration Court which is usually instituted at the end of the criminal sentence." (Reply at 4.) If Petitioner learned this from counsel before he entered his plea, then it undermines petitioner's claim that counsel did not advise him about deportation. If he had this knowledge on his own before he entered his plea, then he cannot prove that he was prejudiced by counsel's alleged failure to advise him that he would be deported again. In sum, given that deportation would have been such a key component of Petitioner's case for illegal re-entry after a previous deportation and that he admitted to Judge Black that he knew he had violated immigration laws, it is implausible that Petitioner was not made aware of the upcoming deportation proceedings.

For Ground One, Petitioner has not carried his burden under Strickland to demonstrate both that his counsel's performance was deficient and that this deficiency prejudiced his defense. Focusing on the second Strickland prong as it relates to plea agreements, and assuming *arguendo* that Petitioner's assertions are correct, Petitioner has not even suggested, let alone demonstrated, that he would have insisted on having a trial if he knew that he could be sentenced to 51 months rather than 18-24 or if he had been advised that he could be deported. Furthermore, in light of the undisputed facts, insisting on a trial would very likely not have helped Petitioner. Petitioner voluntarily pled guilty to re-entering the United States after a previous deportation; there is not

any conceivable way that Petitioner would have fared better by proceeding to trial rather than signing the plea agreement.

As a final point to respond to all three issues under Ground One, I note that in order for me to believe the allegations in Petitioner's motion, I would have to believe that he lied under oath in open court to other judges with this attorney at his side.  Petitioner has not provided any explanation why he told both Judge Schneider and Judge Black that he understood the plea agreement.  Without any reason provided for Petitioner's reversal of his version of the truth, I am inclined to believe the testimony provided under oath, in court, and before Petitioner's sentence began.

**Ground Two**

For Ground Two, Petitioner also asserts three issues.  First, Petitioner "asserts that his guilty plea is invalid because same was entered unknowingly, involuntary and without the benefit of competent counsel."  (Mot. at 5.)  I cannot credit this assertion because it is directly contrary to the record Petitioner created in open court.  Petitioner told Judge Schneider that he had enough time to review the Plea Agreement with his attorney, he understood the terms, nobody coerced him into signing (Tr. 54-17) and that he was satisfied with the representation that his attorney had provided (Tr. 3:23-25).

Second, Petitioner adds that "counsel refused to allow Movant the opportunity to fully read the plea agreement."   (Mot. at 5.)  This too, is directly contrary to what Petitioner told Judge Schneider.  I find that Petitioner's accusation is unbelievable, particularly in light of the paragraph immediately above his signature that starts with, "I have read this agreement and carefully reviewed every part of it with my attorney. . . ."  (Agreement at 6.)

Third, Petitioner claims that, "The guilty plea was coerced by and through the actions of

counsel...." (Mot. at 5.) This assertion appears to be completely baseless, as Petitioner as not alleged any specifics with regard to the actions of counsel that were coercive, and it is difficult to imagine what counsel could have done that would have been coercive given Petitioner's criminal history. Despite the criminal history counsel nevertheless obtained the minimum sentence within the guideline range, 51 months. Petitioner specifically told Judge Schneider that he had not been coerced and, as mentioned above, there is not any explanation why I should disbelieve what he swore to Judge Schneider and now believe what Petitioner argues in the motion.

Again considering the Strickland factors as they relate to the issues under Ground Two, Petitioner has not demonstrated that his attorney was deficient and that the deficiency was so prejudicial that Petitioner would not have accepted a plea agreement if he had not had ineffective representation.

### Ground Three

For Ground Three, Petitioner asserts facts and issues that are repetitive of Grounds One and Two. The issues have been addressed, above.

### Ground Four

For Ground Four, Petitioner requests an evidentiary hearing. (Mot. at 8.) In light of the clear record from Petitioner's communications with two prior judges, an evidentiary hearing would not materially assist me in recommending a disposition.

## RECOMMENDED DISPOSITION

The Court concludes that Petitioner is not entitled to any relief with respect to the claims raised in his § 2255 motion. Therefore, the Court recommends that Petitioner's motion (Doc. 1) be DENIED and that this civil proceeding be DISMISSED WITH PREJUDICE in its entirety.

Within fourteen (14) days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant 28 U.S.C. § 636(b)(1), file written objections to these proposed findings and recommended disposition.  A party must file any objections with the clerk of the district court within the fourteen (14) day period allowed if that party would like to have appellate review of the proposed findings and recommendations.  If objections are not filed, appellate review will not be allowed.

*Robert Hayes Scott*
_____
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE